## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

BLOUNT CONSTRUCTION
COMPANY, INC.

     *Plaintiff*,

v.

CITY OF CUMMING.

     *Defendant*.

CIVIL ACTION FILE

NO: 2:23-cv-00155-RWS

**JURY TRIAL DEMANDED**

## <u>VERIFIED COMPLAINT FOR DAMAGES</u>

COMES NOW, Plaintiff BLOUNT CONSTRUCTION COMPANY, INC. ("Blount"), by and through undersigned counsel, and hereby files its Complaint showing the Court as follows:

## <u>PARTIES AND JURISDICTION</u>

### 1.

Plaintiff Blount is a Georgia Corporation having its principal office located at 1730 Sands Place, Marietta, Georgia 30067.

### 2.

Defendant City of Cumming (the "City") is a municipality and political subdivision of the State of Georgia located in Forsyth County, Georgia. Defendant is within this judicial district and division.

3.

Subject matter jurisdiction over Plaintiff's complaint for damages is proper in this Court pursuant to 28 U.S.C. § 1331.

4.

Subject matter jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367.

5.

This Court has personal jurisdiction over Defendant.

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

7.

Blount is a full-service asphalt paving company which, among other things, manufactures asphalt primarily for building roads.

8.

Since 1946, Blount has generated goodwill in the marketplace and has operated as a profitable corporation in Georgia and other neighboring states.

9.

Blount is engaged in interstate commerce.

10.

In 1989, Blount acquired the real property located at 911 Canton Highway, Cumming, Georgia 30040 (the "Property"). Blount's ownership in the Property is evidenced by a warranty deed dated April 4, 1989 (the "Deed"). A true and correct copy of the Deed is attached and incorporated as **Exhibit A.**

11.

Since it acquired the Property, Blount has not disturbed the embankment or slope adjoining the abutting property that is owned, controlled by, and to be maintained by the City of Cumming.

12.

Since Blount acquired the Property, the natural vegetation and undergrowth on the slope adjoining the abutting property had flourished and the earthen slope remained stable. A true and correct picture of the vegetation on the Property prior to December 6, 2022, is attached and incorporated as **Exhibit B.**

13.

From 1975 to December 5, 2023, the National Weather Service has recorded at least ten (10) instances where four (4) or more inches of rain fell and the earthen slope remained undisturbed and intact.

14.

The City of Cumming exclusively owns, controls, and operates two water towers and attendant feeder and distribution pipes on the property abutting Blount's Property, located at 921 Canton Highway, Cumming, Georgia 30040 (the "City's Property).

15.

The City's two water towers holding approximately 800,000 and 500,000 gallons of water, respectively, were installed and sit on top of a ridge running along the north side of Blount's Property boundary.

16.

The watermain pipe(s) supplying the City's water towers was originally located about ten (10) feet north of the Blount Property line, with part of the pipe running within the earthen slope of hillside along the Property.

17.

Upon information and belief, due to the neglect and failure of the City to maintain, monitor, and inspect, the watermain pipe(s) feeding the water towers (*hereinafter* "Watermain System") began leaking and continuously, and unnaturally saturating the soil on the earthen ridge and slope adjoining the Property and the City's Property sometime prior to December 6, 2022.

18.

Upon information and belief, the City had failed to routinely inspect the condition of the Watermain System or to monitor whether the piping was unnaturally concentrating and directing waterflow onto and the unnatural saturation of the Property, particularly the earthen ridge and slope.

19.

Upon information and belief, since Blount's purchase of the Property, the City has failed to properly maintain the Watermain System as the pipes have unnaturally caused and allowed increased water flow onto, be concentrated upon and be directed specifically toward the Property.

20.

The City has exerted exclusive control and dominion over the Watermain System and water towers at all times.

21.

On December 6, 2022, at or about 11:00 P.M., the Watermain System on the City's Property burst, releasing turbid and unnaturally concentrated water from the pipes and water tower continuing until approximately 9:30 A.M. on December 7, 2022 (the "Watermain System Failure") directly onto Blount's Property.

22.

NCEI (NOAA) Station Cumming 2 N, GA US US00092408, approximately 2.35 miles northeast of Blount's Property, reported rainfall of only 2.13 inches on the night of the Watermain System Failure.

23.

Upon information and belief, the City received an emergency notification sometime shortly after 11:00 P.M. on December 6, 2022, that the supply pipe had burst and the water towers were improperly draining.

24.

Despite receiving such warning, the City did nothing in immediate response to the emergency warning allowing the unnatural and concentrated release and flow of an extraordinary quantity of water onto Blount's Property.

25.

Despite receiving the emergency notification warning, the City failed to give warning to Blount.

26.

Alternatively, either no emergency notification system was in place or the emergency notification system was not properly maintained and/or was inoperable.

27.

The Watermain System Failure caused approximately 1.3 million gallons of water to be unnaturally released from the pipe(s) and the towers, and directed onto the Property resulting in catastrophic failure of the earthen slope and an unnatural landslide obliterating vegetation and anything in the deluge's pathway.

28.

On the morning of December 7, 2022, the City's Director of Utilities, Jonathan Heard ("Mr. Heard"), inspected the Property and stated that the City had in fact received an alarm that the water towers were empty, but an employee disregarded the alarm thinking it was a false alarm.

29.

Mr. Heard further stated that the pipe(s) at issue had previously caused issues with leaks and that the City had previously considered moving the pipe.

30.

In the wake of the Watermain System Failure, the City retained GeoStabilization International to build a 100-foot long, 10-foot-high shotcrete faced soil nail wall (the "Shotcrete Wall") as an purported emergency temporary repair.

31.

Construction of the Shotcrete Wall began on or about December 19, 2022, and was completed on or about January 17, 2023.

32.

Upon information and belief, the City failed to abide by its own application process to implement and engineer the construction of the Shotcrete Wall, which Blount fears said temporary structure is unsoundly built and not in accord with customary and standard engineering practices, and is an ongoing physical threat to the property of Blount and its personnel in the event of another future catastrophic event involving the Watermain System.

33.

Upon information and belief, and based upon a report from the City, the City sent agents and representatives onto Blount's property on or around March 8, 2023, and likely on other occasions.

34.

The City's agents and representatives entered Blount's Property and took boring samples from Blount's Property without Blount's knowledge, permission, or consent to enter the Property. A true and accurate copy of the City's boring sample locations is attached and incorporated as **Exhibit C.**

35.

The City's agents and representatives trespassed upon Blount's Property.

36.

The City's agents and representatives took Blount's Property without Blount's permission and without compensation nor the opportunity to inspect and/or recover what was taken.

**DAMAGE TO BLOUNT'S PROPERTY AND PERSONALTY**

37.

As a result of the Watermain System Failure and unnatural saturation and ultimate deluge, two retaining ponds on Blount's Property were severely silted and damaged by severe erosion of earthen material and other particulate from the slope.

38.

As a result of the Watermain System Failure and unnatural deluge, two trailers on Blount's Property were damaged.

39.

As a result of the Watermain System Failure and unnatural deluge, two containers filled with equipment on Blount's Property were damaged.

40.

As a result of the Watermain System Failure and unnatural deluge, an approximate area of 0.4 acres on the northern hillside of Blount's Property abutting the City's Property was denuded of vegetation, undergrowth and trees, which in many instances were fully uprooted. A picture of the earthen slope after the Watermain System failure is attached and incorporated as **Exhibit D.**

41.

As a result of the Watermain System Failure, Blount's on-site access roads and onsite detention ponds were damaged, unnaturally silted and/or blocked and rendered unusable for an extended period of time.

42.

As a result of the Watermain System Failure, Blount has suffered damage to its business, including lost business, lost profits, and business opportunities.

43.

Blount has been forced to send work to third parties because the Property, its asphalt plant, was inoperable or unusable due to the Watermain System Failure and the resultant unnatural, directed and concentrated deluge from the artificial point source on the City's property.

44.

Sending its asphalt work to third parties, and not being able to operate its asphalt plant on the Property has caused Blount significant lost profits, which can be quantifiably shown with reasonable certainty.

45.

The City's actions and inaction directly resulted in damages to Blount in an amount to be proven at trial.

**EXPERT REPORTS**

46.

Between December 8 and December 9, 2022, the City retained and sent GeoSystems Engineering, Inc. ("GeoSystems") to provide an assessment of the earthen slope failure.

47.

On February 13, 2023, Blount informed the City that it was represented by counsel and submitted an open records requests (the "ORR"). A true and correct copy of Blount's correspondence is attached and incorporated as **Exhibit E.**

48.

The City, through its counsel, confirmed receipt of the ORR and unilaterally (and without authority) extended its time to respond to the ORR.

49.

On April 12, 2023, the City produced its initial batch of documents requested in the ORR.

50.

The City made subsequent supplemental productions to the ORR on May 3, 2023 and May 18, 2023. True and accurate copies of the City's emails regarding its ORR productions are attached and incorporated as **Exhibit F**.

51.

On April 12, 2023, the City produced a report by GeoSystems dated April 5, 2023 (the "GeoSystems Report"). A true and accurate copy of the GeoSystems Report is attached and incorporated as **Exhibit G**.

52.

The GeoSystems Report identified that the pipe as a point source that leaked water which unnaturally increased the water content of the soil and lowered the integrity and strength of the previously undisturbed soil.

53.

On or about March 25, 2023, Blount retained RIO GeoEngineering, LLC (RIO) to evaluate Blount's Property.

54.

Blount also retained IronStone Surveying, Inc., to conduct a survey of Blount's Property following the Watermain System Failure.

55.

On May 30, 2023, RIO delivered a preliminary engineering evaluation of the slope and Watermain System Failure (the "Preliminary RIO Report"). A true and accurate copy of the RIO Report is attached and incorporated as **Exhibit H**.

56.

The Preliminary RIO Report identified the watermain location as being within 10 feet of the City/Blount property line below the crest of the slope within the area of the earthen slope failure.

57.

The Preliminary RIO Report further identified that soil cover of approximately 12 inches covered the pipe section that failed, making the pipe depth improperly susceptible to ground freezing and other damaging of the pipe.

58.

The Preliminary RIO Report also identifies that historic rainfall data shows that the slope area has been subject to up to 5.4 inches of rain since 1975 and that at least 10 daily rainfall events since 1975 have exceeded 4 inches in short periods of time.

59.

The Preliminary RIO Report concludes that the slope and Watermain System Failure and resulting deluge was the result of the City's failure to properly maintain the pipes, including external and internal corrosion of the pipes, bolts missing at pipe joints, and failing to prevent trees from growing and rooting immediately adjacent to the pipe, which led to and contributed to the pipe leaking and consequential over-saturating the soil of the earthen slope area.

**ANTE LITEM NOTICE**

60.

On May 31, 2023, Blount sent a formal ante litem notice (the "Ante Litem") to the City pursuant to O.C.G.A. § 36-33-5, which was delivered to the Mayor of the City of Cumming. A true and accurate copy of the Ante Litem is attached and incorporated as **Exhibit I**.

61.

Pursuant to O.C.G.A. § 36-33-5, the City was required to respond to Blount's Ante Litem claim by July 3, 2023.

62.

Upon information and belief, the City did not respond to Blount's Ante Litem by July 3, 2023.

63.

In fact, Blount did not receive any response from the City regarding the Ante Litem notice until counsel for Blount emailed the City confirming the lack of response meant the City rejected the Ante Litem settlement offer.

64.

The City proceeded to subsequently email a (yet to be by delivered by USPS as counsel claimed) Letter, dated June 30, 2023, rejecting the Ante Litem claim via email on July 12, 2023. A true and accurate copy of the City's Ante Litem response is attached and incorporated as **Exhibit J**.

65.

Counsel requested proof of postage prepaid and copies of same, but counsel for the City ignored the request and has not produced any such postage for a mailing on or before June 30, 2023.

**COUNT I**
**INVERSE CONDEMNATION**

66.

Counsel Blount incorporates by reference the statements and allegations contained in Paragraphs 1-65 as if set forth fully herein verbatim.

67.

Under the Fifth Amendment of the United States Constitution, as well as Article I, Section III of the Georgia Constitution, private property shall not be taken or damaged for public purpose without just compensation.

68.

The City took affirmative action installing the piping system supplying the City's water towers and failed to properly maintain the pipes, the water tower and/or the system.

69.

The City's failure to maintain the Watermain System and to provide lateral support directly caused damage to Blount's Property and has prevented Blount from its quiet use and enjoyment of its Property, thereby causing a taking.

70.

The City's failure to timely respond to its Emergency Warning system caused damage to Blount's Property and has prevented Blount from its quiet use and enjoyment of its Property, thereby proximately resulting in a taking.

71.

The City's failure to either have an emergency water shutoff switch or use an emergency water shutoff switch has caused damage to Blount's Property and has prevented Blount from its quiet use and enjoyment of its Property, thereby proximately resulting in a taking.

72.

The City's agents and representatives, in trespassing and taking unauthorized samples from Blount's Property has prevented Blount from its quiet use and enjoyment of its property, has deprived Blount of its property without fair, adequate and just compensation, and thereby proximately resulted in a taking.

73.

Blount has not been compensated by the City for this inverse condemnation.

74.

The City has violated Blount's United States Constitutional Rights.

75.

The City has violated Blount's State of Georgia Constitutional Rights.

76.

As a result of this inverse condemnation, the City is liable to Blount for damages in an amount to be proven at trial.

## **COUNT II**
## **VIOLATION OF THE CLEAN WATER ACT**

77.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-76 as if set forth fully herein verbatim.

78.

Under 40 CFR 230.3(s), the detention ponds on the Blount Property are waters of the United States that feed into other navigable waterways.

79.

The detention ponds are kept for the purposes of performing certain uses in connection with the operation of Blount's business operations and are necessary to remain clean, un-silted, and not overfilled.

80.

As a result of the Continuing Watermain System Failure, the City improperly caused or contributed to the cause that unnaturally and unlawfully silted Blount's detention ponds from an unnatural point source(s) exclusively within the control and dominion of the City and located on the City's property, and consequently, upon information and belief, unlawfully silted and impacted the integrity of downstream navigable waterways, in violation of the Clean Water Act, the Georgia Water Quality Control Act, and the Georgia Erosion and Sedimentation Act.

81.

As a result of these violations of the Clean Water Act by which the City caused unlawful discharge of pollutants from a point source(s) into waters of the United States altering the integrity of same, the City is liable to Blount for damages in an amount to be proven at trial and other applicable statutory relief.

## COUNT III
## NEGLIGENCE

82.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-81 as if set forth fully herein verbatim.

83.

As the higher riparian landlord, the City owed a duty to (1) properly place, secure, and monitor the pipe(s) running up to and serving the water towers and (2) not to cause or permit the pipes to unnaturally leak and/or release excessive water directly onto Blount's Property—particularly given that the City altered the natural flow of water and increased the turbidity and concentration of water which was foreseeably directed toward Blount.

84.

The City knew, or should have known, that the Watermain System was improperly placed, secured, maintained, and monitored.

85.

Upon information and belief, the City was warned, of the Watermain System Failure and failed to take any action.

86.

In the alternative, even if the City was not warned, the City should have been warned of the Watermain System Failure.

87.

The City breached its duty to Blount by failing to properly maintain the Watermain System and by further failing to take mitigating action upon learning of the Watermain System Failure.

88.

As a direct and proximate cause of the City breach of its duties, Blount incurred damages to Blount's Property.

89.

As a direct and proximate cause of the City's Negligence, the City is liable to Blount for damages in an amount to be proven at trial.

90.

In addition, Blount is entitled to its attorneys' fees pursuant to O.C.G.A. §13-6-11 as the City has been stubbornly litigious, acted in bad faith, and has caused Blount unnecessary trouble and expense.

## COUNT IV – IN THE ALTERNATIVE
## GROSS NEGLIGENCE

### 91.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-90 as if set forth fully herein verbatim.

### 92.

The City failed to exert even a slight degree of care and reckless disregard for its duty to Blount by failing to respond to the emergency alarm it received on the night of December 6, 2023.

### 93.

The City breached its duty to Blount by failing to ever inspect or properly maintain the Watermain System and by further failing to take any mitigating action upon learning of the Watermain System Failure.

### 94.

As a direct and proximate cause of the City breach of its duties, Blount incurred damages to Blount's Property.

### 95.

As a direct and proximate cause of the City's Negligence, the City is liable to Blount for damages in an amount to be proven at trial.

96.

In addition, Blount is entitled to its attorneys' fees pursuant to O.C.G.A. §13-6-11 as the City has been stubbornly litigious, acted in bad faith, and has caused Blount unnecessary trouble and expense.

## COUNT V
## CONTINUING NUISANCE

97.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-96 as if set forth fully herein verbatim.

98.

The City created a continuing nuisance by failing to maintain the Watermain System and failing to abate the continuing Watermain System failure, even after notice and demand to abate the nuisance.

99.

Each day the Watermain System was not maintained and resulted in leaking water directed onto the Blount Property and saturating the soil of the earthen slope constituted a "fresh" nuisance as contemplated under Georgia law.

100.

The City has created a further nuisance by installing the Shotcrete Wall on the slope adjoining Blount's Property.

101.

The City's installation of the Shotcrete Wall interferes with Blount's right to possess, use, and quietly enjoy its property because it does not mitigate any potential future movement of the slope, or threat of a future Watermain System failure, but rather creates another foreseeable possibility for additional damage to Blount's Property and personnel in the event the slope is unstable and the Shotcrete Wall fails, and/or another catastrophic failure occurs with the Watermain System resulting in a foreseeable washout of the Shotcrete Wall and avalanche of solid concrete rolling down the earthen slope.

102.

As long as the Shotcrete Wall remains, the nuisance remains a direct physical threat to and continuing nuisance to Blount, its personnel, and potentially Blount's downstream neighbors and their property.

103.

The City should indemnify and hold Blount forever harmless to any and all claims from Blount's downstream neighbors so long as the continuing nuisance remains.

104.

The City is liable to Blount for all damages in an amount to be proven at trial.

105.

Blount is entitled to its attorneys' fees pursuant to O.C.G.A. §13-6-11 as the City has been stubbornly litigious, acted in bad faith, and has caused Blount unnecessary trouble and expense.

106.

Blount is further entitled to punitive damages under O.C.G.A. § 51-12-5.1, including uncapped punitive damages for the City's specific intent to harm by intentionally and knowingly installing a Shotcrete Wall that remains a direct threat to Blount's operations, personnel and its Property.

## <u>COUNT VI</u>
## <u>FAILURE TO MAINTAIN LATERAL SUPPORT</u>

107.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-106 as if set forth fully herein verbatim.

108.

Under O.C.G.A. § 44-9-3, owners of adjoining lands owe to each other the lateral support of the soil of each to that of the other in its natural state.

109.

Prior to the Watermain System Failure, the slope running between the City's and Blount's properties was in its natural state—fully forested and untouched by Blount.

110.

The City owed Blount a duty to maintain the lateral support of the soil on its and Blount's Property in its natural state.

111.

As a result of the City's negligence and the resulting Watermain System Failure, the City failed to maintain the lateral support of the land it owed to Blount.

112.

As a direct result of the City's failure to maintain lateral support, Blount has suffered damages.

113.

The City is liable to Blount for damages in an amount to be proven at trial.

## COUNT VII
## TRESPASS TO CHATTEL

### 114.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-113 as if set forth fully herein verbatim.

### 115.

Blount was, and is, entitled to the possession and use of its personalty.

### 116.

The Watermain System Failure, which was caused by the City's actions, damaged Blount's personalty and deprived Blount of the use of its personal property.

### 117.

Specifically, the Watermain System Failure destroyed (1) two office trailers, two (2) containers filled with inventory and work equipment, and other equipment that was near the area damaged by the Watermain System Failure.

### 118.

As a result of this Trespass to Chattels, Blount has been damaged in an amount to be proven at trial.

119.

In addition, the intentional tort of Trespass to Chattels carries the bad faith element. As such, Blount is entitled to its attorneys' fees pursuant to O.C.G.A. §13-6-11 as the City has been stubbornly litigious, acted in bad faith, and has caused Blount unnecessary trouble and expense.

120.

Blount is further entitled to punitive damages under O.C.G.A. § 51-12-5.1.

## COUNT VIII
## TRESPASS TO REAL PROPERTY

121.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-120 as if set forth fully herein verbatim.

122.

Blount has the right to possess, use, enjoy, dispose of, and exclude all others from the use of its real property.

123.

Upon information and belief, and based on a report conducted by the City, the City sent agents and representatives onto Blount's Property to inspect and take soil samples from the property without Blount's knowledge or consent.

124.

Further, as a result of the slope and Watermain System Failure, ingresses and egresses on Blount's Property were blocked preventing Blount from the use and enjoyment of Blount's Property, *vis a vis* vehicles from entering or exiting the premises.

125.

These blockages effectively stopped asphalt production operations on Blount's Property

126.

As a result of the City's trespasses, Blount has been deprived of the use and enjoyment of its land and has suffered damages.

127.

Accordingly, the City is liable to Blount for damages in an amount to be proven at trial.

128.

In addition, the intentional tort of Trespass to Real Property carries the bad faith element. As such, Blount is entitled to its attorneys' fees pursuant to O.C.G.A. §13-6-11 as the City has been stubbornly litigious, acted in bad faith, and has caused Blount unnecessary trouble and expense.

129.

Blount is further entitled to punitive damages under O.C.G.A. § 51-12-5.1.

## COUNT IX
## LOST PROFITS

130.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-129 as if set forth fully herein.

131.

The Property served as Blount's in-house asphalt manufacturing facility for the majority of its projects statewide.

132.

The manufacturing of asphalt has been and is an extremely lucrative business for Blount.

133.

The Watermain System Failure harmed Blount's Property and personalty.

134.

In particular, Blount was rendered incapable of manufacturing and fulfilling orders for asphalt.

135.

As a result of the Watermain System Failure, Blount is entitled to recover all ascertainable lost business profits as a result of the damage caused by the City and the Watermain System Failure.

136.

To date, Blount lost profits are $2,211,726.00 and can be proven with reasonable certainty.

137.

As such, the City is liable to Blount for damages in an amount to be proven at trial, but in any event, not less than $2,211,726.00.

## **COUNT X**
## **ESTOPPEL**

138.

Blount incorporates by reference the statements and allegations contained in Paragraphs 1-137 as if set forth fully herein.

139.

The City failed to timely, and in good faith, consider and act on Blount's Ante Litem within thirty (30) days as required pursuant to O.C.G.A. § 36-33-5.

140.

Accordingly, Blount is entitled to the presumption that the City admits to the facts stated in Blount's Ante Litem notice.

141.

Further, the City should be estopped from rebutting any facts as stated in Blount's Ante Litem notice.

**WHEREFORE,** Plaintiff respectfully prays as follows:

a) As to Count I, judgment against Defendant in an amount to be proven at trial;

b) As to Count II, judgment against Defendant in an amount to be proven at trial;

c) As to Count III, judgment against Defendant in an amount to be proven at trial

d) As to Count III, an award of attorneys' fees, costs, and expenses against the Defendant;

e) As to Count IV, judgment against Defendant in an amount to be proven at trial;

f)  As to Count IV, an award of attorneys' fees, costs, and expenses against the Defendant;

g)  As to Count V, judgment against Defendant in an amount to be proven at trial;

h)  As to Count V, an award of attorneys' fees, costs, and expenses against the Defendant;

i)  As to Count V, an award of punitive damages against the Defendant;

j)  As to Count VI, judgment against Defendant in an amount to be proven at trial;

k)  As to Count VII, judgment against Defendant in an amount to be proven at trial;

l)  As to Count VII, an award of attorneys' fees, costs, and expenses against the Defendant;

m) As to Count VII, an award of punitive damages against the Defendant;

n)  As to Count VIII, judgment against Defendant in an amount to be proven at trial;

o)  As to Count VIII, an award of attorneys' fees, costs, and expenses against the Defendant;

p)  As to Count VIII, an award of punitive damages against the Defendant;

q) As to Count IX, judgment against Defendant in an amount to be proven at

trial;

r) As to Count X, a presumption that Defendant admits to the facts as stated

in Plaintiff's Ante Litem; and

s) For such other relief as this Court seems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Respectfully submitted this 9th day of August, 2023.

THE HILBERT LAW FIRM, LLC      CHALMERS, ADAMS,
     BACKER & KAUFMAN, LLC

/s/ Kurt R. Hilbert      /s/ Alex B. Kaufman
Kurt R. Hilbert      Alex B. Kaufman
Georgia Bar No. 352877      Georgia Bar No. 136097
     Juan S. Patino
205 Norcross Street      Georgia Bar No. 284280
Roswell, GA 30075      James M. Hicks III
khilbert@hilbertlaw.com      Georgia Bar No. 316791
770-551-9310

11770 Haynes Bridge Road
#205-219
Alpharetta, GA 30009
akaufman@chalmersadams.com
jpatino@chalmersadams.com
jhicks@chalmersadams.com
404-964-5587
404-492-3394
517-898-7114